## Henry A. Foster, Adm'r, v. Lake Street Elevated R. R. Co.

1. MASTER AND SERVANT—*Servant Choosing an Extra Hazardous Method of Doing His Work, Assumes the Extra Risk.*—An engineer of an elevated train who, to save time, chooses an unusual and extra hazardous method of descending from the engine to the street, assumes the extra risk of such action.

Trespass on the Case.—Death from negligent act.   Error to the Superior Court of Cook County; the Hon. AXEL CHYTRAUS, Judge presiding. Heard in the Branch Appellate Court at the October term, 1902. Affirmed.   Opinion filed May 19, 1903.

W. S. ELLIOTT, JR., and PEASE & POLKEY, attorneys 'for plaintiff in error.

O. W. DYNES, attorney for defendant in error.

MR. PRESIDING JUSTICE WATERMAN delivered the opinion of the court.

Appellant began in the Superior Court an action to recover damages arising from the death of Alexander L. Whitney, said to have been occasioned by the negligence of appellee. At the conclusion of the evidence the jury, by instruction of the court, returned a verdict for the defendant upon which there was judgment, from which this appeal is taken.

Upon the trial it appeared that appellee was at the time of the accident operating a railway running along a street in the city of Chicago. The railway was raised some forty feet above the level of the street and consisted of two tracks, westward-bound trains running on the north track and eastward-bound trains on the south track. These tracks were about twelve feet apart, the structure upon which they rested being connected by iron girders a short distance below the tracks. Whitney was an engineer employed by appellee and engaged in running one of its trains. The stations along the road were built outside of the tracks and the station platforms were on a level with

the platforms of the cars when standing at the stations. South of the north track and north of the south track were board walks about forty inches in width. These walks could and were used by employes of the company when in doing its work it was necessary for them to do so, notwithstanding the following published rule of the company: "Employes are forbidden from crossing or walking upon the street;" and also rule 40: "The roadmaster shall not allow any person other than employes of the company in the ordinary discharge of their duties to enter upon the track or structure without a permit."

Upon the date of the accident at Fortieth street station, a portion of the walk just south of the north track had been torn up by workmen repairing the track and making changes in that vicinity.

Prior to that time on various occasions this walk had been torn up by workmen who had before quitting replaced all portions of the walk so as not to leave a hole therein. Upon the date in question, the workmen in leaving at evening had left the walk with an open space some eighteen or twenty inches wide opposite where engineers going west stopped at the Rockwell street station. Rockwell street station was not a place for the changing of engines or engineers. At Fortieth street, about a mile from this, there was a place for the changing of engineers, the space between the two tracks being floored over so that one could, upon the structure, safely cross from one track to the other and might walk between the tracks beside engines, doing whatever work, in the way of oiling or otherwise, it was necessary should be done.

Upon the night of the accident, regularly, the run of the deceased ended at 12:30, he being at such hour to be succeeded by L. S. Holly. The regular changing place for engineers at which Holly was to relieve Whitney was at Rockwell station. For nine or ten days prior to the accident, Whitney had, by arrangement with Holly, been relieved by the latter at Rockwell station instead of Rockwell street. This relief at Rockwell station instead of

at Rockwell street was at the special request of Whitney, it enabling him to save some forty minutes of time in getting to his home.

The change was by permission of appellee's superintendent, Mr. Tuthill, but not by his direction, Holly assenting thereto upon the request of Whitney. For nine nights previous to the accident, Whitney, at Fortieth street station, instead of, when there turning over his engine to Holly, getting off on the north side of the track where there was a station platform level with the platform of the engine, had climbed down on the south side of his engine to the walk, some forty to forty-eight inches in width, resting on the structure below. It is contended by appellee that he had done so for the purpose of walking upon the girders to the south track and then descending to the street; and that upon the night of the accident he got off on the south side of the engine for the same purpose. The engineer who relieved him at this point, Mr. Holly, testified that there was nothing to prevent Mr. Whitney's having gotten off upon the side that he, Holly, got on, namely, the north side; that to climb down on the south side of the engine and go across on the girders was quicker than to get off on the north side to the platform and from thence crossing over.

Upon the night of the accident Mr. Whitney, when Holly got onto the engine at Fortieth street station, climbed down upon the south side of the engine, and almost at once fell through the aperture in the walk to the street below and was killed. There was no evidence showing or tending to show that upon the night of the accident Whitney had any duty to discharge requiring him to get down as he did upon the south side of the engine, nor that in so doing he was endeavoring to discharge any duty incident to the service, nor that there was any reason for his so doing other than that it might have been the case that by doing so and then passing to the south track by way of the girders connecting the tracks, he could reach the street sooner than by getting off upon the platform on the north side; nor was there any evidence tending to show that any of the officers or agents of the road having in any way con-

trol over him as a servant of the road, had knowledge or notice that he had been in the practice of leaving or intended to get off his engine upon the south side.

As Mr. Whitney, to go to his home from the Rockwell street passenger station, had there to take a train going east, by getting off his engine on the south side and therefrom by way of the girders to the south track, and thence climbing onto the south platform, he saved the walk down to the street from the north platform, crossing the street, and the walk up the stairs leading to the south platform. There is no direct testimony from anything he said as to what his intention was in getting down from the south side of his engine as he did the night of the accident and had for some nine days previous. All that can be known in this regard is by inference to be drawn from the testimony as to the different respective routes and distances between his engine and the south platform. There is no evidence that he did not have both time and opportunity to have gotten off on the north side of his engine. Whatever may have been his purpose or intention in doing as he did, as before stated, his conduct was not only in violation of the rules of the company and not in the discharge of his duty, but without notice to appellee that he was about so to do or thought of so doing. The place at which he got off, namely, the south side of his engine, was not lighted up, save very dimly by street lamps some forty feet below. His conduct in getting off as he did was a failure to exercise ordinary care for his own safety and such as precludes a recovery in this case.

The judgment of the Superior Court is affirmed.